UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

R&R ENTERPRISES,                          )
                                          )
            Plaintiff,                    )
                                          )        No. 3:12-CV-573
                                          )        (SHIRLEY)
V.                                        )
                                          )
ANSWER FINANCIAL,                         )
                                          )
            Defendant.                    )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the

Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings,

including entry of judgment [Doc. 6]. The Court finds that the issues presented in this case are

ripe for adjudication. The Court finds that the Plaintiff's position is well-taken, and for the

reasons stated herein, Judgment will be entered in favor of the Plaintiff.


I.      **BACKGROUND**

On October 8, 2002, InsLogic and Plaintiff R&R Enterprises ("R&R") entered into a

lease agreement (hereinafter "the Lease Agreement"). Defendant Answer Financial, Inc.,

("Answer Financial") is a successor corporation to InsLogic.

R&R is in the business of developing and leasing commercial property and buildings,

including the property at issue which is located at 90 Union Valley Road, Oak Ridge, Tennessee,

37830 (the "Property"). Answer Financial is a Delaware corporation, with its principal place of business in California. Answer Financial operates a call center at the Property.

On September 5, 2002, R&R submitted to InsLogic, through Equis – InsLogic's commissioned "exclusive representative" – a proposal for a build-to-suit facility to house an office facility for InsLogic. In its proposal, R&R proposed a "ten (10) year [lease] term with two (2) five (5) year options to extend with six (6) months written notice." Exhibit 1 at 7. Upon acceptance of its proposal, R&R submitted its proposed lease to Equis, as the commissioned "exclusive representative" of InsLogic.

In pertinent part, the proposed lease provided that the "Initial Term [of the lease] shall expire on the tenth (10th) anniversary of the Commencement Date (the 'Expiration Date')" and as follows:

> 4. <u>EXTENSION OPTIONS</u>.
>
> (a) Lessor hereby grants to Lessee two (2) successive options to extend the term hereof (the "Extension Options") for a period of five (5) years each (the "Extension Terms"), on the same terms and conditions as during the immediately preceding term (except as set forth in this Section 4), which extension shall be exercised automatically and successively unless Lessee gives not less than six (6) months' written notice to Lessor (the "Cancellation Notice") before the end of the preceding term of its intent not to so extend; ....
>
> ***
>
> 19. <u>HOLDING OVER</u>. Should the Lessee continue to occupy the Leased Premises after the expiration or termination of this Lease, without the consent of Lessor, such tenancy shall be month to month, and the monthly base rental rate of such tenancy shall be two hundred percent (200%) of the last full Monthly Installment in effect during the Initial Term or Extension Term, as applicable.
>
> ***

27. <u>COVENANTS TO SURRENDER</u>. Upon the expiration or termination of the Lease, Lessee shall quit and surrender the Leased Premises to Lessor in good condition and repair, normal wear and tear excepted.

Exhibit 2 at 5, 6, 20 and 29.

Equis then submitted a "red-lined" version of the lease to R&R. Exhibit 3. The "red-lining" was drafted by the law firm of Bass, Berry and Sims on October 3, 2002. In pertinent part, the "red-lining" included:

4. <u>EXTENSION OPTIONS</u>.

(a) Lessor hereby grants to Lessee two (2) successive options to extend the term hereof (the "Extension Options") for a period of five (5) years each (the "Extension Terms"), on the same terms and conditions as during the immediately preceding term (except as set forth in this Section 4), which extension shall be exercised ~~automatically and successfully unless the lessee gives~~ <u>by Lessee giving</u> not less than six (6) months' written notice to Lessor (the "<u>Extension</u> ~~Cancellation~~ Notice") before the end of the preceding term of its intent ~~not~~ to so extend;

***

19. <u>HOLDING OVER</u>. Should the Lessee continue to occupy the Leased Premises after the expiration or termination of this Lease, without the consent of Lessor, such tenancy shall be month to month, and the monthly base rental rate of such tenancy shall be <u>one</u> ~~two~~ hundred <u>twenty-five</u> percent (<u>125</u> ~~200~~%) of the last full Monthly Installment in effect during the Initial Term or Extension Term, as applicable. <u>Notwithstanding anything herein to the contrary, if Lessee gives Lessor sixty (60) days notice of its intent to holdover, the first six (6) months of holdover rent shall be a the rate existing immediately before the Expiration Date</u>.

Exhibit 3 at 1-21.

In response, R&R rejected the proposed "red-lining" of the "Extension Options" and "Holding Over" provisions proposed by Equis, and R&R reinserted and resubmitted the original language. <u>See</u> Exhibit 4. However, Equis and R&R eventually reached an agreement whereby

3

the second sentence of the holding over provision, as proposed by Equis but modified to increase the time for the "notice of its intent to holdover" from 60 days to 180 days, was retained.

On October 8, 2002, R&R, through its President, Richard G. Chinn, Jr. ("Mr. Chinn"), and InsLogic, through its President and COO, Tom Farrell, entered into the Lease Agreement at issue. Exhibit 5. The Lease Agreement provided that the "Initial Term [of the lease] shall expire on the tenth (10th) anniversary of the Commencement Date." Ex. 5 at 5. It further provided:

4. <u>EXTENSION OPTIONS</u>.
   (a) Lessor hereby grants to Lessee two (2) successive options to extend the term hereof (the "Extension Options") for a period of five (5) years each (the "Extension Terms"), on the same terms and conditions as during the immediately preceding term (except as set forth in this Section 4), which extension shall be exercised by Lessee giving not less than six (6) months' written notice to Lessor (the "Extension Notice") before the end of the preceding term of its intent to so extend; . . . .

\* \* \*

20. <u>HOLDING OVER</u>. Should the Lessee continue to occupy the Leased Premises after the expiration or termination of this Lease, without the consent of Lessor, such tenancy shall be month to month, and the monthly base rental rate of such tenancy shall be two hundred percent (200%) of the last full Monthly Installment in effect during the Initial Term or Extension Term, as applicable. Notwithstanding anything herein to the contrary, if Lessee gives Lessor one hundred and eighty (180) days notice of its intent to holdover, the first six months of holdover rent shall be at the rate existing immediately before the Exportation [sic] Date.

\* \* \*

28. <u>COVENANTS TO SURRENDER</u>. Upon the expiration or termination of the Lease, Lessee shall quit and surrender the Leased Premises to Lessor in good condition and repair, normal wear and tear excepted.

Ex. 5 at 6, 21, and 28.

4

On May 19, 2003, the Lease Agreement was amended to expressly provide for a "Commencement Date" of April 14, 2003 and a "Lease Expiration Date" of April 30, 2013. Exhibit 6. Through an Assignment and Assumption of Lease, dated March 1, 2006, InsLogic assigned its interests in the Lease Agreement to Defendant Answer Financial. Exhibit 7 at 2. Answer Financial, in the same Assignment and Assumption of Lease, assumed the duties and obligations of InsLogic. Id.

On September 7, 2012, Robert Slingerland, President and CEO of Answer Financial wrote a letter to Mr. Chinn, stating in part:

> The purpose of this letter is to notify you, pursuant to Section 20 of the Lease, that the Lessee intends to continue to occupy the Leased Premises after the initial term of the Lease for six (6) months under all the terms and conditions of the Lease at the existing rate in affect for the last month of the initial term.

Exhibit 8.

On October 11, 2012, Mr. Chinn responded on behalf of R&R Enterprises:

> This letter is in response to your letter dated September 7, 2012, wherein you advised that you are notifying R&R Enterprises that Answer Financial, Inc., intended on continuing to occupy the Leased premises, commonly known as 90 Union Valley Road, Oak Ridge, Tennessee, after the expiration of the Lease with R&R and convert to a holdover term. As you know Answer Financial, Inc. has two options to extend the Lease, for two additional five (5) year terms, by providing at least six (6) months notice prior to the end of the then current term of the Lease. The current term of the Lease will terminate on April 13, 2013, unless Answer Financial, Inc. elects to exercise its option to extend pursuant to the terms of the Lease.
>
> The purpose of this letter is to notify you that R&R Enterprises is not able to accommodate your request to remain in the premises after April 13, 2013, unless Answer Financial, Inc. elects to exercise its option. Accordingly, Answer must either exercise its option to extend the Lease or surrender the premises as of midnight on April 13, 2013.

Exhibit 9.[1]

On October 19, 2012, Mr. Slingerland, on behalf of Answer Financial, responded:

> Thank you for your response to our letter indicating that we are exercising our right to holdover for an additional 6 month period at our office located at 90 Union Valley Road, Oak Ridge, Tennessee. Unfortunately, we don't concur with your position. We want to assure you that we are diligently pursuing our plan to relocate to a space that can accommodate our growth requirement, office configuration and provide easy access for our current and future employees.

Exhibit 10.

On November 2, 2012, R&R filed its Complaint for Declaratory Judgment [Doc. 1]. R&R moved the Court for a "declaration of rights adjudicating that the expiration date of the Lease Agreement in question is April 30, 2013 and that the holding over provisions of the Lease Agreement do not create a right to remain in the premises for six (6) months as claimed by the Defendant, but rather a month[-]to[-]month tenancy as claimed by Plaintiff." [Doc. 1 at 7].

Answer Financial filed its Answer on November 21, 2012, agreeing with the facts relevant to the case but arguing that the holdover provision contained in Section 20 of the Lease Agreement establishes a six-month lease immediately following the expiration of the original term of the Lease Agreement. [Doc. 3]. Answer Financial maintained that R&R was not entitled to declaratory judgment in its favor.

On December 11, 2012, the Honorable Thomas A. Varlan, Chief United States District Judge, entered an Order referring this case to the undersigned based upon the consent of the parties. At the scheduling conference held December 13, 2012, the parties agreed that the relief sought in this case would be appropriately disposed of based upon their pleadings and

---

[1] It appears that Mr. Chinn inadvertently substituted "April 13, 2013" for "April 30, 2013." Neither Answer nor R&R has argued that April 13, 2013, is the date on which the Lease Agreement terminates. The Court finds the use of April 13, 2013, is a typographical error, and has accordingly, not afforded its use in Mr. Chinn's letter any weight.

supplemental trial briefs. The parties filed their respective trial briefs on January 30, 2013, and on February 6, 2013, the parties presented oral arguments to the Court addressing the dispositive relief sought. Attorneys Chris Cain and Thomas Scott, Jr., were present representing the Plaintiffs. Attorney Todd Covert was present representing the Defendant.

## II.    POSITIONS OF THE PARTIES

R&R moves the Court to declare that the expiration date of the Lease Agreement is April 30, 2013. In addition, R&R moves the Court to find that the holding over provision, found in Section 20 of the Lease Agreement, does not create a right to remain on the premises for six months. Instead, R&R maintains that the Court should find that any holdover beyond April 30, 2013, is on a month-to-month basis. [Doc. 8].

In support of these proposed findings, R&R argues that the plain and literal language of Section 20 is clear and unambiguous. R&R maintains that Section 20 sets the rental rate that will be charged during a hold over period depending upon whether notice of the hold over period is given or is not given. R&R maintains that to find that Section 20 provides an option to renew for six months would require, first, that the Court ignore the clear language of Section 20 and, second, for the Court to interpret the Lease Agreement in a tortured manner.

Finally, R&R argues that if the Court finds the second sentence of Section 20 is ambiguous, then the Court should construe the Lease Agreement against Answer Financial because Answer Financial's predecessor in interest drafted the provision.

Answer Financial takes the position that Section 20 provides a six-month holdover term at the rental rate existing at the expiration of the Lease Agreement. Answer Financial submits

that at the beginning of the seventh month after the expiration of the Lease Agreement, the Lease Agreement becomes a month-to-month tenancy at 200% of the original rental rate. [Doc. 9].

In support of its position, Answer Financial submits that the use of "notwithstanding" in the introductory phrase of the second sentence gives the second sentence priority over the first sentence. Answer Financial argues that the second sentence contains an if/then condition precedent, and if Answer Financial gives 180 days' notice then a six-month tenancy is established. Answer Financial argues that it complied with the condition precedent by providing 180 days' notice of the intent of Answer Financial to holdover after the Expiration Date of the Lease Agreement, and as a result, it should be allowed to occupy the Property for a six-month tenancy.

## III.    ANALYSIS

In its Complaint [Doc. 1], R&R Enterprises presents three requests for relief. First, R&R requests that the Court declare the rights of the parties. Second, R&R moves the Court for a speedy hearing, and third, R&R moves the Court for any other relief the Court may deem appropriate including attorneys' fees. The parties have focused their arguments on the first request for relief, but the Court will address each request for relief in turn.

## A.    Declaratory Judgment

As an initial matter, the parties agree, and the Court finds, that this matter constitutes an actual controversy. The Court finds that declaratory judgment is appropriate under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and because the amount in controversy

exceeds $75,000.00. [Doc. 1 at ¶ 3]. Accordingly, the substantive law of the State of Tennessee

guides disposition of the claims before the Court. See Erie R.R. Co. v. Tompkins, 304 U.S. 64

(1938). The parties do not dispute the applicable law in this case.

In Planters Gin Co. v. Federal Compress & Warehouse Co., Inc., 78 S.W.3d 885 (Tenn.

2002), the Supreme Court of the State of Tennessee explained the standard and procedure for

interpreting contracts under Tennessee law, by stating:

> In "resolving disputes concerning contract interpretation, our task
> is to ascertain the intention of the parties based upon the usual,
> natural, and ordinary meaning of the contractual language."
> Guiliano v. Cleo, Inc., 995 S.W.2d 88, 95 (Tenn.1999). This
> determination of the intention of the parties is generally treated as
> a question of law because the words of the contract are definite and
> undisputed, and in deciding the legal effect of the words, there is
> no genuine factual issue left for a jury to decide. 5 Joseph M.
> Perillo, Corbin on Contracts, § 24.30 (rev. ed. 1998); Doe v. HCA
> Health Services of Tenn., Inc., 46 S.W.3d 191, 196 (Tenn. 2001).
>
> A court's initial task in construing a contract is to determine
> whether the language of the contract is ambiguous. Once found to
> be ambiguous, a court applies established rules of construction to
> determine the parties' intent. "Only if ambiguity remains after the
> court applies the pertinent rules of construction does [the legal
> meaning of the contract] become a question of fact" appropriate for
> a jury. Smith v. Seaboard Coast Line R.R. Co., 639 F.2d 1235,
> 1239 (5th Cir. 1981).

Id. at 890.

"Contractual language 'is ambiguous only when it is of uncertain meaning and may fairly

be understood in more ways than one.'" Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611 (Tenn.

2006) (quoting Farmers–Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn. 1975)).

Contract language will be deemed ambiguous when it can "be understood in more ways than

one." Allstate, 195 S.W.3d at 611 (quoting Farmers–Peoples Bank v. Clemmer, 519 S.W.2d 801,

805 (Tenn.1975)) (internal quotation marks omitted).

Thus, the first issue before the Court is whether the Lease Agreement is ambiguous with regard to Answer Financial's ability to extend the Lease Agreement or hold over. The Court finds that the Lease Agreement is not ambiguous with regard to these issues. The ordinary meaning of the Lease Agreement and its Amendments clearly indicate that the original term under the Lease Agreement expires on April 30, 2013. See Ex. 6. The Court finds that the original term under the Lease Agreement expires April 30, 2013.

On May 1, 2013, Answer Financial has three options: (1) it can vacate the Property and terminate the tenancy; (2) it can continue to occupy the premises for a five-year period by exercising the option contained in Section 4 of the Lease Agreement, so long as appropriate notice has been provided; or (3) it can continue to occupy the premises by holding over and thereby forming a month-to-month tenancy.

Answer Financial has made it clear that it does not intend to exercise either of the first two options. A new facility is under construction in Knoxville, Tennessee, to house Answer Financial, but at the hearing, counsel for Answer Financial represented that the facility is not expected to be finished until the Fall of 2013. Answer Financial does not plan to vacate the Property on May 1, 2013, because its new facility is not ready, nor does Answer Financial plan to stay at the property for five additional years. In addition, the option of staying five years may no longer open to Answer Financial, because Answer Financial arguably failed to give appropriate notice to exercise that five-year extension. Thus, the Court is left to examine the third option, on which the parties have honed their arguments.

The Court finds that the third option – that is, the hold-over option – is not ambiguous. Section 20 is as follows:

> 20. HOLDING OVER. Should the Lessee continue to occupy the
> Leased Premises after the expiration or termination of this Lease,

> without the consent of Lessor, such tenancy shall be month to month, and the monthly base rental rate of such tenancy shall be two hundred percent (200%) of the last fully Monthly Installment in effect during the Initial Term or Extension Term, as applicable. Notwithstanding anything herein to the contrary, if Lessee gives Lessor one hundred and eighty (180) days['] notice of its intent to holdover, the first six months of the holdover rent shall be at the rate existing immediately before the Exp[iration] Date."

Ex. 5 at 21.

Answer Financial argues that the Lease Agreement provides it a "right" to a six-month extension of the Lease Agreement. R&R Enterprises maintains that the first sentence of Section 20 states the period for the tenancy (month to month) and the rental rate for the tenancy (200%), and the second sentence allows for a reduced rental rate during the first six months of the hold over tenancy *if* 180 days' notice is given of the intent to holdover. The Court finds that R&R's reading is a reading consistent with the plain language of Section 20, and there is no "right to a six-month holdover extension of the Lease Agreement.

Based upon the usual, natural, and ordinary of the language used in the Lease Agreement, the Court finds that Section 20 of the Lease Agreement, operates:

1. *If* Answer Financial occupies the Property after April 30, 2013, *without* notice of intent to hold over <u>and</u> *without* the consent of R&R Enterprises, *then* Answer Financial is deemed to have undertaken a month-to-month tenancy <u>and</u> the rental rate for that month-to-month tenancy will be 200% of the last full Monthly Installment of the Initial Term; <u>but</u>

2. *If* Answer Financial occupies the Property after April 30, 2013 <u>and</u> has given notice to R&R Enterprises that it intends to hold over on the Property <u>and</u> that notice is given to R&R Enterprises at least 180 days before April 30, 2013, *then* Answer Financial will pay rent for the next six months of any holdover tenancy at

11

a reduced rate – *i.e.* the rate that was being paid immediately before April 30, 2013. *If* the holdover continues beyond six months, the rent thereafter will be at a rate of 200% of the last full Monthly Installment of the Initial Term.

Accordingly, the Court will enter declaratory judgment consistent with this finding.

## B.    Speedy Hearing

This case was consented to the undersigned on December 11, 2012, and the parties appeared before the Court on December 13, 2012, for a scheduling conference. The Court set the oral argument in this case at the earliest practicable time for the Court and counsel for the parties, and oral arguments were presented on February 6, 2013.

Based upon the foregoing, the Court finds that the parties were afforded a speedy hearing, and the request for a speedy hearing will be **DISMISSED AS MOOT**.

## C.    Attorneys' Fees and Other Appropriate Relief

R&R Enterprises also moves the Court to award "any and all other relief that this Court deems appropriate and to which it may be entitled, including attorney's fees." [Doc. 1 at 7].

The Lease Agreement does contain an attorneys' fees provision stating that the prevailing party in any action brought "on account of the other party's violation" of the Lease Agreement "shall be entitled to all costs incurred in connection with such action including reasonable attorney's fees." Ex. 5 at 33. Initially, the Court finds that a strict construction of this provision would preclude awarding fees in this case, because the Court has not found that a violation of the Lease Agreement has occurred. Moreover, the parties did not argue the attorneys' fees issue at any length at the hearing, and the Court finds that R&R has not demonstrated that an award of attorneys' fees would be appropriate.

Rule 54 of the Federal Rules of Civil Procedure, however, directs that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees –

should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  Answer Financial has not

identified any statute, rule, or court order that would preclude awarding R&R its costs in this

case, and the Court, therefore, finds that an award of costs is appropriate.  R&R **SHALL FILE** a

bill of costs in a manner consistent with Local Rule 54.1 of the Local Rules of the Eastern

District of Tennessee and the Eastern District of Tennessee Guidelines on Preparing Bills of

Costs to allow the Clerk of Court to determine the amount of costs to be awarded.

## IV.      CONCLUSION

Based upon the foregoing, the Court finds that R&R Enterprises' request for declaratory

relief is well-taken, and it will be **GRANTED**.  The Court **FINDS** and **DECLARES**, pursuant to

28 U.S.C. § 2201 that: (1) the expiration date of the Lease Agreement between Answer Financial

and R&R Enterprises is April 30, 2013; (2) Section 20 – also known as the "Holding Over"

provision – of the Lease Agreement does not create a right to remain on the premises for a six-

month tenancy; and (3) in the case of Answer Financial holding over, Section 20 of the Lease

Agreement creates a month-to-month tenancy, at the rental rates noted herein.

The Court finds that R&R Enterprises has been afforded a speedy hearing, and therefore,

R&R Enterprises' request for a speedy hearing will be **DISMISSED AS MOOT**.

Finally,  R&R Enterprises' request for attorneys' fees will be **DENIED** and

**DISMISSED**.  R&R Enterprises will be awarded appropriate costs under Rule 54 of the Federal

Rules of Civil Procedure and Local Rule 54.1 of the Local Rules of the Eastern District of

Tennessee.

**ORDER ACCORDINGLY.**

ENTER:

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge